DAVENPORT TAXI, INC. *v.* STATE LABOR COMMISSIONER

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, JS.

Argued November 8, 1972—decided January 18, 1973

*Robert W. Murphy,* assistant attorney general, with whom, on the brief, were *Robert K. Killian,* attorney general, *Carl D. Eisenman,* special assistant attorney general, and *Donald E. Wasik,* assistant attorney general, for the appellant (defendant).

*Howard C. Kaplan,* for the appellee (plaintiff).

MacDonald, J. This is an appeal from a judgment of the Superior Court in an action brought pursuant to the provisions of § 31-8 of the General Statutes where the court set aside an order of the director of the minimum wage division of the Connecticut department of labor. The defendant, the commissioner of labor for the state of Connecticut, assigns as error two conclusions reached by the court: (1) that the plaintiff Davenport Taxi, Inc., was subject to the federal Fair Labor Standards Act, 52 Stat. 1060 as amended, 29 U.S.C. § 201 et seq. (June 25, 1938), hereinafter called the FLSA, to the exclusion of being subject to the jurisdiction of the defendant; and (2) that the plaintiff was not subject to the provisions of §§ 31-76b—31-76j of the General Statutes without an express finding that the plaintiff came within at least one of the exceptions set forth in § 31-76i. The other assignments of error were not briefed and accordingly are treated as abandoned. *State* v. *Keeler,* 163 Conn. 42, 43, 316 A.2d 782; *State* v. *Grayton,* 163 Conn. 104, 109, 302 A.2d 246.

"The court made no finding although, ordinarily, one is essential to test the conclusion reached. Practice Book § 609; *Wagner* v. *Zoning Board of Appeals,* 153 Conn. 713, 714, 216 A.2d 182; *Gitlitz* v. *Davis,* 146 Conn. 280, 281, 150 A.2d 213; *Mendrochowicz* v. *Wolfe,* 139 Conn. 506, 509, 95 A.2d 260; Maltbie, Conn. App. Proc. § 126. The . . . [defendant] did not file either a request for a finding or a draft finding. Consequently, no finding was made. The absence of a finding does not necessarily preclude action by this court. We are, however, limited in our inquiry to the material facts which

appear on the record. *Wooster* v. *Wm. C. A. Fischer Plumbing & Heating Co.,* 153 Conn. 700, 703, 220 A.2d 449." *Robertson* v. *Robertson,* 164 Conn. 140, 142, 318 A.2d 106. The record here consists only of the appeal to the Superior Court, an exhibit made part of the record, the answer and the judgment. There is a memorandum of decision but it does not establish facts and cannot take the place of a finding. *E. M. J. Corporation* v. *Zoning Board of Appeals,* 154 Conn. 667, 668, 228 A.2d 500; *Wagner* v. *Zoning Board of Appeals,* 153 Conn. 713, 714, 216 A.2d 182. We may, however, consult the memorandum for a better understanding of the basis of the court's decision. *Gary Excavating, Inc.* v. *North Haven,* 164 Conn. 119, 120, 318 A.2d 84; *Murphy* v. *Murphy,* 143 Conn. 600, 602, 124 A.2d 891.

It appears from the record that on April 23, 1969, the director of the minimum wage division of the Connecticut department of labor caused an order to be served on the plaintiff directing it to pay the sum of $3630.50 for overtime pay for certain employees who had performed services as "dispatchers" for the plaintiff, a Connecticut corporation operating a taxi business in the city of Stamford pursuant to the authority of the state public utilities commission. The plaintiff appealed to the Superior Court and on November 20, 1970, its appeal was "sustained for lack of jurisdiction" in the defendant to issue the order in question. The court's memorandum of decision states as the basis of its decision that since "the character of the work performed by the dispatchers in interstate commerce is substantial, thereby subjecting the employer to the provisions of the . . . [FLSA]," the FLSA precluded the state from applying the state

overtime wage law and the director of the minimum wage division, therefore, lacked the jurisdiction necessary to order the payment of overtime compensation. The fact that the employees in question actually were engaged in interstate commerce is conceded, but the defendant basically claims that the FLSA is not exclusive in its operation and that the state and federal governments have concurrent jurisdiction over employees subject to the Act so that the state overtime compensation provisions are applicable. The fundamental issue presented in this appeal, therefore, is whether Congress, in enacting the FLSA, intended completely to preclude the states from regulating the wages, hours and overtime pay of employees engaged in interstate commerce.

"It is often a perplexing question whether Congress has precluded state action or by the choice of selective regulatory measures has left the police power of the States undisturbed except as the state and federal regulations collide." *Rice* v. *Santa Fe Elevator Corporation,* 331 U.S. 218, 230, 67 S. Ct. 1146, 91 L. Ed. 1447. Generally, it may be stated that "acts of Congress preclude state interferences with interstate commerce when: (1) Congress has occupied or pre-empted the field; (2) there [is] a conflict or clash between the congressional and state statutes; and (3) when the local interference inhibit[s] the attainment of the policy underlying the congressional legislation." 2 Antieau, Modern Constitutional Law, p. 95 (1969). In considering whether state interference is precluded it is important to note that "Congress, in producing the Act, did not make it coextensive with the limits of its powers over commerce. 'The history of the legislation leaves no doubt that Congress chose not

to enter areas which it might have occupied' . . . [*Kirschbaum Co.* v. *Walling,* 316 U.S. 517, 522, 62 S. Ct. 1116, 86 L. Ed. 1638]. This necessarily means that there is a remaining area which is the subject for appropriate state regulation. Congress 'indicated its purpose to leave local business to the protection of the states' [*Walling* v. *Jacksonville Paper Co.,* 317 U.S. 564, 570, 63 S. Ct. 332, 87 L. Ed. 460; *10 East 40th St. Bldg., Inc.* v. *Callus,* 325 U.S. 578, 582, 65 S. Ct. 1227, 89 L. Ed. 1806]. This less-than-complete coverage is manifested and occasioned by the Act's failure to contain, with respect to interstate commerce, such words as 'affecting' or 'promoting' rather than the narrower 'engaged in commerce or in the production of goods for commerce.' [*Higgins* v. *Carr Bros. Co.,* 317 U.S. 572, 574, 63 S. Ct. 337, 87 L. Ed. 468]." *Goldberg* v. *Wade Lahar Construction Co.,* 290 F.2d 408, 414 (8th Cir.).

Although we have not been referred to and have been unable to find a case which clearly determines this issue, we are led by the authorities to the conclusion that Congress intended the FLSA to be exclusive[1] except for those instances under 29 U.S.C. § 218 and the exemptions provided by 29 U.S.C. § 213 which will be discussed later in this opinion. In *Mitchell* v. *H. B. Zachry Co.,* 362 U.S. 310, 320, 80 S. Ct. 739, 4 L. Ed. 2d 753, Mr. Justice Frankfurter stated that "[a]lthough the . . . [FLSA] has never contained even a general definition of the relationship of an activity to commerce necessary to justify its inclusion, such a relationship has been

---

[1] There are two cases which indicate a contrary position. See *Tennessee Coal, Iron & R. Co.* v. *Muscoda Local No. 123,* 137 F.2d 176 (5th Cir.); *Butte Miners' Union No. 1* v. *Anaconda Copper Mining Co.,* 112 Mont. 418, 118 P.2d 148.

extrapolated by the courts in conformity with the statutory scheme, so as to *displace* state regulation 'throughout the farthest reaches of the channels of interstate commerce.' *Walling* v. *Jacksonville Paper Co.,* . . . [317 U.S. 564, 567, 63 S. Ct. 332, 87 L. Ed. 460]." (Emphasis added.) In the same opinion, he twice referred to "displacement of state power." *Mitchell* v. *H. B. Zachry Co.,* supra, 316. The defendant contends that this language was merely dicta, but in Roberts, The Court and the Constitution, at page 56, Mr. Justice Roberts, in discussing *United States* v. *Darby,* 312 U.S. 100, 61 S. Ct. 451, 85 L. Ed. 609, which upheld the constitutionality of the FLSA, states that "the effect of sustaining the act was to place the whole matter of wages and hours of persons employed through the United States, with slight exceptions, under a single federal regulatory scheme and in this way completely to supersede state exercise of the police power in this field."[2] In an earlier decision, *Kirschbaum Co.* v. *Walling,* 316 U.S. 517, 522, 62 S. Ct. 1116, 86 L. Ed. 1638, Mr. Justice Frankfurter spoke of Congress not "occupying" areas which it might have occupied because the FLSA did not apply to employees in industries merely "affecting" commerce. Lower federal court decisions also lend support for the preemptive nature of the Act: "[I]f the petitioner was employed in interstate commerce, the Federal Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq., controls to the exclusion of the State Legislation. Congress has occupied the field of labor relations in such commerce and the

---

[2] The Court and the Constitution is cited in The Constitution of the United States of America, Analysis and Interpretation, Legislative Reference Service, Library of Congress, p. 189, as an authoritative interpretation of the FLSA.

State no longer has any power to deal with the subject." *Sirmon* v. *Cron & Gracey Drilling Corporation,* 44 F. Sup. 29, 30 (D. La.). Also in *Divine* v. *Levy,* 36 F. Sup. 55, 58 (D. La.), the District Court stated that because the plaintiff was employed in interstate commerce "the . . . [FLSA] comes to his succor; the benefits coming to him thereunder are to the exclusion of those coming to him under a state statute. The state statute is to apply only when the unpaid and discharged laborer has been engaged in intrastate commerce." The New York Court of Appeals held similarly in a case dealing with the Hours of Service Act, 45 U.S.C. § 61 et seq., which regulates the hours of work of certain classes of employees of carriers engaged in interstate commerce, stating that: "Where employees are engaged both in interstate and intrastate commerce, regulation of their hours of labor and their wages by congressional action shall be construed as an exclusion of the States from the same field." *Long Island R. Co.* v. *Department of Labor,* 256 N.Y. 498, 516, 177 N.E. 17. It is also important to note that in 1953 the Connecticut attorney general advised that the Connecticut Minimum Wage Act, Rev. 1949, § 3786 et seq., was not intended to apply to any person engaged in interstate commerce because such persons are covered by federal legislation. 28 Conn. Atty. Gen. Rep. 14.

The defendant cites § 18 of the FLSA, 29 U.S.C. § 218, as support for his contention that operation of the FLSA is not exclusive. In relevant part this section states: "No provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than

the minimum wage established under this chapter or a maximum workweek lower than the maximum workweek established under this chapter." We believe, however, that the defendant's reliance is misplaced. As we read § 218 it allows state laws to apply to that part of interstate commerce covered by the FLSA only where the state hour and wage provisions are more beneficial to the laborer than those in the federal act. Had Congress intended that the states have concurrent jurisdiction to enforce state laws respecting the domain of interstate commerce covered by the Act we believe it would not have thus specifically limited § 218 to instances where the state minimum wage is higher and the state maximum workweek is lower than wages and hours provided by the FLSA. The view that this is the proper interpretation of § 218 is supported by *Divine* v. *Levy,* supra, where the District Court held that since § 218 "is silent as to penalty provisions . . . we should assume that the act of Congress, through this section, by implication, supersedes the penalty provisions of the various state statutes on the relation of employer and employee. . . . Even though the penalties of both the state and federal statutes could be imposed without there being a direct conflict, we believe the penalty provision of the federal act, when invoked, becomes exclusive and the penalty provisions of the state statute may not be applied. There may be no exact conflict in actual application of the two penalties, but, nevertheless, they conflict in essence because of duplicity. The Congress measured the penalty by the exactions of the Act (minimum wage, maximum hours, etc.) and no other than the specified penalties are to be imposed." Prior to and at the time of the institution of this suit General Stat-

utes § 31-76c of the Overtime Wage Act did not establish a maximum workweek lower than the maximum workweek provided by § 207 of the FLSA. It is clear that the defendant, therefore, obtained no jurisdiction over the plaintiff under § 218 of the FLSA.

Further research into the history of the FLSA reveals several amendments which apparently were not called to the attention of the trial court, but which serve to strengthen our conclusion that its decision was correct. As previously noted, the FLSA has exemption provisions which leave certain employees outside the coverage of the Act. Since Congress in enacting the FLSA left a domain of regulation for the states, such as businesses considered predominantly local in nature, we believe that specifically exempted employees also enter that domain. Prior to February 1, 1967, "any employee of an employer engaged in the business of operating taxicabs" was exempted from § 206 of the FLSA, the minimum wage provision, and also § 207, the maximum hours and overtime provision. 29 U.S.C. § 213 (a) (12) (1964 Ed.). On February 1, 1967, however, an amendment to the FLSA[3] took effect which ended entirely the exemption under § 206 and left only *drivers* "employed by an employer engaged in the business of operating taxicabs" exempt under § 207. 80 Stat. 833, 29 U.S.C. § 213 (b) (17). Thus, nonoperating employees were brought under the overtime protection of the Act. See United States Code Congressional and Administrative News, 3006 (1966). After January 31, 1967, therefore, nonoperating employees such as dispatchers were not subject to state wage and

[3] Pub. L. 89-601, § 213, 80 Stat. 833, 29 U.S.C. § 213 (Sept. 23, 1966).

hour laws unless the laws were more beneficial to the laborer than the FLSA. Since on May 5, 1969, when this action was brought, state laws were not more beneficial, nonoperating employees were not subject to state wage and hour laws from January 31, 1967, onward. The net result of this is that the dates when the wages of the dispatchers were earned might have had a bearing on the trial court's decision. Nowhere, however, does the record indicate that the court was informed when the wages were earned by the dispatchers. In the absence of this information and for the reasons previously stated, we can find no error in the ruling of the court that the plaintiff, with respect to the employees involved here, was not subject to the jurisdiction of the defendant. In view of the foregoing conclusions we find the second assignment of error to be without merit.

There is no error.

In this opinion the other judges concurred.