P. Joseph **PERARO**, Commissioner of Labor, State of Connecticut, ex rel. Randy J. **CASTRO**, et al.

v.

**CHEMLAWN SERVICES CORP.**

Civ. No. H–86–935 (AHN) MJAC.

United States District Court, D. Connecticut.

July 27, 1988.

---

Richard Sponzo and Charles A. Overend, Asst. Attys. Gen., Hartford, Conn., for plaintiffs.

Barclay Robinson, Jr., Robinson & Cole, Hartford, Conn., Robert D. McDonald, Davis Wright & Jones, Washington, D.C., for defendant.

## RULING ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

NEVAS, District Judge.

The plaintiff, the Commissioner of Labor for the State of Connecticut ("Commissioner"), brought suit in state court on behalf of a group of current and former employees of the Chemlawn Services Corporation ("Chemlawn") for overtime wages allegedly due under Connecticut statutory law. Chemlawn removed the case to this court on federal question grounds, arguing that it is exempt from overtime wage liability under both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. Sections 201 et seq., and applicable state law. After the Commissioner's motion for remand was denied, the parties entered into a stipulation of facts, including the overtime sums due each employee if the Commissioner prevails, and placed cross-motions for summary judgment before the court. For the following reasons, the defendant's motion is granted and the plaintiff's denied.

### I.

The undisputed facts support the following narrative: Pursuant to Connecticut law, each of the current and former employees of Chemlawn involved in this litigation assigned his or her claim to the Commissioner for overtime wages allegedly due.[1] Each employee works or worked for

---

1. Conn.Gen.Stat. Section 31–68(a) reads in relevant part:

At the request of any worker paid less than the minimum fair wage or overtime wage to which he was entitled under [section 31–60] ..., the commissioner may take an assignment of such wage claim in trust for the assigning employee and may bring any legal action necessary to collect such claim, and the employer shall be required to pay the costs and such reasonable attorney's fees as may be allowed by the court.

Conn.Gen.Stat. Section 31–60(a) creates a violation when an employer pays or agrees to pay less than the minimum fair wage or overtime wage to an employee. The complaint alleges violations of Conn.Gen.Stat. Section 31–76c, which requires that an employer pay time and a half for each hour an employee works in excess of 40 hours in a week. See infra Section II.B. of text. Section 31–76c does not have a corresponding "assignment" provision similar to section 31–68(a). The court concludes, however, that the allegations of the complaint support a cause of action under section 31–60(a) and that

Chemlawn as a "CarpetClean Specialist," a job that involves carpet, rug, and upholstery cleaning at a customer's premises. Chemlawn maintains a central facility in East Windsor, Connecticut, from which specialists are assigned jobs in Connecticut and Massachusetts. A specialist drives one of the defendant's trucks—equipped with cleaning solvents and other job-related paraphernalia—to a jobsite. There, the customer's water is pumped into water heating equipment fixed to the Chemlawn truck. The heated water is mixed with cleaning solutions in a separate tank on the truck and then pumped through a hose into the customer's premises. During the cleaning process, used water is pumped back to the truck for storage in a holding tank.

The time spent in Massachusetts varies substantially from specialist to specialist and from workweek to workweek. Each specialist has workweeks spent exclusively in Connecticut; as to the group of specialists, the percentage of workdays on which each had a Massachusetts assignment ranged from a low of 6% to a high of 46%. Each specialist averages a workweek of approximately 46 to 54 hours, and his or her total earnings are primarily derived from commissions. In addition, the average driving time per day involving a Massachusetts assignment is generally outweighed by the time spent performing a job at the customer's premises.

## II.

### A.

Congress enacted the FLSA in 1938 to protect workers from substandard wages and oppressive working hours. *Barrentine v. Arkansas–Best Freight System, Inc.,* 450 U.S. 728, 739, 101 S.Ct. 1437, 1444, 67 L.Ed.2d 641 (1981). To further these dual purposes, the FLSA permits individual employees to bring wage and hour claims in federal or state court without first exhausting non-judicial avenues of relief. *Id.* at 740, 101 S.Ct. at 1444. As added incentive to individual employees to enforce their FLSA rights in court, the statute permits recovery for back wages, liquidated damages, attorneys' fees, and costs. *Id.* n. 16 (citing 29 U.S.C. Section 216(b)). Furthermore, an individual's right to a minimum wage and overtime pay under the FLSA "cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate." *Barrentine,* 450 U.S. at 740, 101 S.Ct. at 1444 (quoting *Brooklyn Savings Bank v. O'Neil,* 324 U.S. 697, 707, 65 S.Ct. 895, 902, 89 L.Ed. 1296 (1945)).

The employees in the instant proceeding assert their non-waivable right to overtime pay "at a rate not less than one and one-half times the regular rate" for any hours worked in excess of 40 in any workweek. 29 U.S.C. Section 207(a)(1). The FLSA, in 29 U.S.C. Section 213, exempts certain employers and their employees from section 207 coverage. To ensure maximum coverage by the FLSA, however, a section 213 exemption is construed narrowly against the employer asserting it, *Arnold v. Ben Kanowsky, Inc.,* 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960), and the employer bears the burden of proving entitlement to an exemption. *Id.* at 394, 80 S.Ct. at 457. *Accord Donovan v. Carls Drug Co., Inc.,* 703 F.2d 650, 652 (2d Cir.1983). Chemlawn argues that it is exempt under 29 U.S.C. Section 213(b), which provides that "[t]he provisions of section 207 ... shall not apply with respect to—(1) any employee with respect to whom the Secretary of Transportation has power

assignment of the Chemlawn employees claims to the Commissioner was proper.

This case was transferred from the docket of Senior Judge T. Emmet Clarie to the undersigned on September 16, 1987. Judge Clarie denied the Commissioner's motion for remand on April 3, 1987 in an endorsement ruling; at the Commissioner's request, Judge Clarie issued a detailed ruling, on June 24, 1987, setting forth his reasons for denying that motion. In support of the motion, the Commissioner had argued that he lacked standing in federal court to pursue overtime wage claims assigned to him pursuant to state law. Judge Clarie, relying on 29 C.F.R. Section 515.8 and Conn.Gen.Stat. Section 31–68a, found that a state agency may properly maintain a federal action under the FLSA. This court concurs with Judge Clarie's finding.

to establish qualifications and maximum hours of service pursuant to the provisions of section 304 of Title 49...."

Section 304 of Title 49, part of the Motor Carrier Act ("MCA"), was repealed in 1983 but reenacted without substantive change as section 3102 of Title 49.[2] Section 3102(b) provides that "[t]he Secretary of Transportation may prescribe requirements for ... (2) qualifications and maximum hours of service of employees of .. a motor private carrier, when needed to promote safety of operation." 49 U.S.C. Section 3102(b)(2). The term "motor private carrier" as used in section 10102 is defined as

a person, other than a motor carrier, transporting property by motor vehicle, when—

(A) the transportation is as provided in section 10521(a)(1) and (2) of this title [i.e., in interstate commerce];

(B) the person is the owner, lessee, or bailee of the property being transported; and

(C) the property is being transported for sale, lease, rent, or bailment, or to further a commercial enterprise.

49 U.S.C. Section 10102(16).[3] Chemlawn argues that it is a motor private carrier within the meaning of section 3102(b)(2) and is thus subject to regulation by the Secretary of Transportation but not subject to the overtime compensation mandate of section 207 of the FLSA.

■ Chemlawn next argues that its "motor private carrier" exemption extends to its specialists for all workweeks in question, whether or not any particular specialist crossed over into Massachusetts in any given week. 29 C.F.R. Section 782 sets forth the Secretary of Labor's interpretation of the section 213(b)(1) exemption for certain employees of motor carriers and

motor private carriers. 29 C.F.R. Section 782.2(a) states in relevant part:

The exemption of an employee from the hours provisions of the [FLSA] under section 13(b)(1) [29 U.S.C. Section 213(b)(1)] depends both on the class to which his employer belongs and on the class of work involved in the employee's job. The power of the Secretary of Transportation to establish maximum hours and qualifications of service of employees, on which exemption depends, extends to those classes of employees and those only who: (1) Are employed by carriers whose transportation of passengers or property by motor vehicle is subject to his jurisdiction under section 204 of the Motor Carrier Act [now 49 U.S.C. Section 3102] [citations omitted], and (2) engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate ... commerce within the meaning of the Motor Carrier Act. [Citations omitted.]

The Secretary of Labor then applies the exemption

to those employees and those only whose work involves engagement in activities consisting wholly or *in part* of a class of work which is defined: (i) As that of a *driver* ... and (ii) as directly affecting the safety of operation of motor vehicles on the public highways in transportation in interstate ... commerce within the meaning of the Motor Carrier Act. [Citations omitted.]

29 C.F.R. Section 782.2(b)(2) (emphases added).

"Driver" is defined under the regulations as

an individual who drives a motor vehicle in transportation which is, within the meaning of the Motor Carrier Act, in

---

**2.** The repeal and reenactment were effectuated in the same piece of legislation. *See* Pub.L. No. 97–449, Section 7(b), 96 Stat. 2444 (1983). Because the reenactment was done without substantive change to section 304, courts have adopted the court interpretations of section 304 as precedent in construing section 3102, except that powers once vested in the Interstate Commerce Commission now vest with the Secretary

of Transportation. *See Burris v. Bozzay Roadrunner Service, Inc.,* 651 F.Supp. 36, 37 (E.D. Mo.1986).

**3.** Transportation involving "interstate commerce" includes movement from a place in one state to a place in another state. 49 U.S.C. Section 10521(a)(1)(A).

interstate ... commerce.... This definition does not require that the individual be engaged in such work at all times.... 'Drivers,' as thus officially defined, *include*, for example ... *so-called 'driver-salesmen' who devote much of their time to selling goods rather than to activities affecting such safety of operation.*

*Id.* Section 782.3(a) (emphases added). The Secretary of Labor also sets forth a "general rule" on whether the exemption applies in a workweek when a driver performs little or no work directly affecting safety of operation. According to the Secretary,

> if the bona fide duties of the job performed by the employee are in fact such that he is ... called upon in the ordinary course of his work to perform, either regularly or from time to time, safety-affecting activities of the character described in [29 C.F.R. Section 782.2(b)(2)], he comes within the exemption in *all* workweeks when he is employed at such job. This general rule assumes that the activities involved in the continuing duties of the job in all such workweeks will include activities which have been determined to affect directly the safety of operation of motor vehicles on the public highways in transportation in interstate commerce. Where this is the case, the rule applies regardless of the proportion of the employee's time or of his activities which is actually devoted to such safety-affecting work in the particular workweek, and the exemption will be applicable even in a workweek when the employee happens to perform no work directly affecting 'safety of operation.'

*Id.* Section 782.2(b)(3) (emphasis added). A driver directly affects "safety of operation" whenever he "drives a motor vehicle in interstate ... commerce...." *Id.* Section 782.3(b).

Case law supports the statutory and regulatory scheme proferred by Chemlawn and unrebutted by the Commissioner. An interplay exists between the FLSA and 49 U.S.C. § 3102, the recodified version of 49 U.S.C. Section 304 of the MCA. The MCA was enacted in 1935 in response to congres-

sional concerns about safety in interstate commerce. To preserve intact this safety program, there is no concurrent coverage by the FLSA and the MCA. *Levinson v. Spector Motor Service*, 330 U.S. 649, 661–62, 67 S.Ct. 931, 938, 91 L.Ed. 1158 (1947). When synthesizing the MCA and the FLSA, a court must "give full effect to the safety program to which Congress has attached primary importance, even to the corresponding exclusion by Congress of certain employees from the benefits of the compulsory overtime pay provisions of the [FLSA]." *Id.* at 662, 67 S.Ct. at 938. Thus, when the MCA applies to a given employment situation, the FLSA does not.

Under the MCA, the jurisdiction of the Secretary of Transportation is limited to employees whose activities affect the safety of operation of interstate motor vehicles: "The [Secretary] has no jurisdiction to regulate the qualifications or hours of service of any others." *United States v. American Trucking Associations, Inc.*, 310 U.S. 534, 553, 60 S.Ct. 1059, 1069, 84 L.Ed. 1345 (1940). What activities affect such safety of operation is a matter generally left to the Secretary's special knowledge and experience. *Pyramid Motor Freight Corp. v. Ispass*, 330 U.S. 695, 706–07, 67 S.Ct. 954, 959–60, 91 L.Ed. 1184 (1947). Moreover, for purposes of 29 U.S.C. Section 213(b)(1) exemptions under the FLSA, the Secretary need only possess the power to regulate eligible employees, not have exercised that power. *Levinson*, 330 U.S. at 678, 67 S.Ct. at 946. Undoubtedly, the Secretary possesses the power to establish qualifications and maximum hours of service applicable to Chemlawn's specialists if a substantial part of their job activities affects the safety of interstate motor vehicle operations. *Pyramid Motor Freight Corp.*, 330 U.S. at 708, 67 S.Ct. at 960.

■ A Chemlawn specialist who drives one of the defendant's vehicles in interstate commerce obviously affects the safety of such operations while he or she is driving. *See* 29 C.F.R. Section 782.3(b). In assessing whether a specialist's interstate driving constitutes a substantial part of his or her

employment activities, emphasis is not placed on what percentage of an employee's time or activities is devoted to safety of operation work: "It is the *character* of the activities rather than the proportion of either the employee's time or of his activities that determines the actual need for the [Secretary's] power to establish reasonable requirements with respect to qualifications, maximum hours of service, safety of operation and equipment." *Levinson*, 330 U.S. at 674–75, 67 S.Ct. at 944 (emphasis added). If the character of the employee's activities has a substantial effect on motor vehicle safety, then the employer is exempt under 28 U.S.C. Section 213(b)(1). *Yellow Transit Freight Lines, Inc. v. Balven*, 320 F.2d 495, 498 (8th Cir.1963). The Secretary's power wanes, and the employer's section 213(b) exemption consequently fades, only when the employer's interstate activities affecting the safety of interstate motor operations are *de minimis*. *Compare Morris v. McComb*, 332 U.S. 422, 432–34, 68 S.Ct. 131, 136–37, 92 L.Ed. 44 (1947) (MCA exemption applies where four percent of carrier's business was interstate) *with Kimball v. Goodyear Tire & Rubber Co.*, 504 F.Supp. 544, 548 (E.D.Tex.1980) (MCA exemption inapplicable where 0.17% of trips were interstate) *and Coleman v.*

*Jiffy June Farms, Inc.*, 324 F.Supp. 664, 670 (S.D.Ala.1970), *aff'd*, 458 F.2d 1139 (5th Cir.), *cert. denied*, 409 U.S. 948, 93 S.Ct. 292, 34 L.Ed.2d 219 (1972) (MCA exemption inapplicable where 0.23% of trips were interstate). As noted earlier, Chemlawn and the Commissioner have stipulated that the percentage of workdays on which each specialist crossed over into Massachusetts ranged from 6% to 46%. Though the nature of this statistic is somewhat different from that present in *Morris*, it is unequivocally clear that the interstate portion of the specialists' work is not so infinitesimal as to preclude Chemlawn's entitlement to an overtime payment exemption. Accordingly, the court concludes that Chemlawn is exempted from the FLSA requirement that an employer pay overtime wages for workweeks in which its employees labor in excess of 40 hours.[4]

## B.

■ Chemlawn also argues that it is entitled to a "driver" exemption under Connecticut law as well. 29 U.S.C. Section 218(a) expressly permits states to set more stringent overtime requirements than those contained in the FLSA.[5] *See Pettis Moving Co., Inc. v. Roberts*, 784 F.2d 439, 441 (2d Cir.1986). Conn.Gen.Stat. Section 31–

---

**4.** In addition to the Secretary of Labor's pronouncements on the applicability of the section 213(b)(1) exemption to drivers of motor private carriers, the defendant relies upon another source as support for its argument that it is exempt from overtime compensation liability under the FLSA. After initiation of this suit by the Commissioner, Chemlawn requested an opinion from the Department of Transportation ("DOT") about whether the company owed overtime compensation to the specialists involved in this suit. In its request, Chemlawn included as a given that the principal duty of the specialists was the cleaning of carpets, rugs, and upholstery, not the driving of company trucks. Chemlawn set out three hypothetical fact patterns designed to illustrate the varying degrees of interstate travel engaged in by its specialists. Hypothetical one involved a specialist who drives across a state line on only one of 18 days worked. In hypothetical two, the specialist is hired, works one day without driving across a state line, and then quits his job. The last hypothetical involved a specialist who travels across state lines on 13 of the 19 days he worked in a month. In response to its request, Chemlawn received an opinion from the chief

counsel of DOT's Federal Highway Administration. The DOT official found on the basis of the hypotheticals that Chemlawn is a motor private carrier under 49 U.S.C. Section 3102 and that the fictitious specialists were subject to DOT authority and thus unprotected by the compulsory overtime provisions of the FLSA.

The Secretary of Labor, not the Secretary of Transportation, is charged with interpreting the scope and applicability of the section 213(b)(1) exemption. 29 C.F.R. Section 782.0(b). Though the DOT official's opinion carries some persuasive influence, it is not necessary for the court to ascertain how much because the court has independently concluded that the section 213(b)(1) exemption is applicable to Chemlawn.

**5.** 29 U.S.C. Section 218(a) provides in relevant part:

No provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law ... establishing a minimum wage higher than the minimum wage established under this chapter or a maximum workweek lower than the maximum workweek established under this chapter....

76c provides, in language similar to that in 29 U.S.C. Section 207, that an employer must pay an employee time and a half for each hour worked in excess of 40 hours per week. Conn.Gen.Stat. Section 31–76i sets forth exceptions to the overtime requirement of section 31–76c, just as 29 U.S.C. Section 213 exempts specified employers from the overtime entitlement contained in section 207. Chemlawn relies on section 31–76i(a) of the General Statutes, which states in relevant part that section 31–76c shall not apply to "any driver ... with respect to whom the ... Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of applicable federal law...." Conn.Gen.Stat. Section 31–76i(a).

Chemlawn contends that the Connecticut exemption for "drivers" is identical in scope to the FLSA exemption. According to the defendant, the Connecticut legislature, by

> enacting the Connecticut statute subsequent to the federal statute, obviously intended to track federal law closely, and to enact a scheme of regulation of wages and hours that would work in conjunction with federal law. This is demonstrated (1) by its explicit incorporation of federal law by reference, as well as (2) by its careful choice of well-established terms of art in the field of wage and hour law. The inescapable presumption must be that terms in the Connecticut statute are intended to have the same meaning as under federal law; and that, except where explicitly provided otherwise, the scope of an exemption under the state statute is intended to be coextensive with the similar exemption under federal law.

[Defendant's] Brief in Support of Motion for Summary Judgment at 21. Because it is exempt under federal law, Chemlawn's argument goes, it is also exempt under the substantially identical exemption created by Connecticut law.

The Commissioner offers no opposition to Chemlawn's contention that section 31–76i contains a driver exemption imbued with the characteristics of the federal exemption available under 29 U.S.C. Section 213. Chemlawn does not provide, and the court has been unable to locate, a Connecticut appellate level case construing the driver exemption in section 31–76i, but there seems little doubt that the Connecticut provision is intended to parallel its federal analog. The court finds, therefore, that Chemlawn's driver exemption under federal law inures to its benefit under Connecticut law as well.

### III.

As noted, the Commissioner does not challenge Chemlawn's interpretations of federal and Connecticut law on the driver exemption from overtime payments. In the absence of such opposition, and after having concluded that Chemlawn is entitled to a driver exemption, it would seem self-evident that summary judgment should now enter for the defendant. The Commissioner would object to such entry, however, because he believes that Connecticut law creates an affirmative entitlement to overtime compensation, under the facts of the instant proceeding, superseding both federal law and the Connecticut driver exemption.

The Commissioner relies on subsection (g) of 31–76i, which reads:

> [Section 31–76c] shall not apply with respect to ... (g) any employee *except outside salesmen* (1) whose regular rate of pay is in excess of two times the minimum hourly rate applicable to him under section 31–58, (2) more than half of whose compensation for a representative period, being not less than one month, represents commissions on goods or services, and (3) who does not work more than fifty-four hours during a work week of seven consecutive calendar days. In determining the proportion of compensation representing commissions, all earnings resulting from the application of a bona fide commission rate shall be deemed commissions on goods or services without regard to whether the computed commissions exceed the draw or guarantee.

Conn.Gen.Stat. Section 31–76i(g) (emphasis added). The Commissioner's position is that Chemlawn's specialists are "outside salesmen" within the meaning of 31–76i(g) and are entitled to overtime pay under section 31–76c.[6] In short, the plaintiff argues that because the phrase "except outside salesmen" is contained within an exception to section 31–76c, outside salesmen are governed by section 31–76c.

Complicating this analysis is another reference to "outside salesmen" in section 31–76i. Conn.Gen.Stat. Section 31–76i(f) creates an exemption from overtime pay for "any person employed in the capacity of outside salesman as defined in the regulations of the Federal Fair Labor Standards Act." The Commissioner contends that the terms "outside salesmen" in subsection (g) and "outside salesman" in subsection (f) can be harmonized only if they are construed to have separate meanings. According to the plaintiff, it would be incongruous to create an exemption for FLSA–defined "outside salesmen" in subsection (f) and then nullify that exemption in another provision unless the "outside salesman" in subsection (g) had a meaning different from that intended in subsection (f). Relying on Connecticut law encouraging the construction of a statute so as to make all its parts operative, *see, e.g.*, *Mingachos v. CBS, Inc.*, 196 Conn. 91, 103–04, 491 A.2d 368, 376 (1985), the Commissioner concludes that the reference to "outside salesmen" in subsection (g) creates an affirmative entitlement to overtime pay for those outside salesmen not exempted under the FLSA.

In his brief in support of his motion for summary judgment, the Commissioner constructs an elaborate argument to support his affirmative entitlement theory. He begins by analyzing federal regulations for the "outside salesmen" exemption permitted under the FLSA. He concludes that

federal law recognizes a class of outside salesmen, beyond those exempted by the statute, that is covered by the overtime compensation requirement of section 207. He also concludes that this expansive interpretation applies to the Chemlawn specialists involved in this case. In his next layer of analysis, the plaintiff contends that the legislative history behind the "outside salesmen" reference in section 31–76i(g) supports the enhanced meaning attributed to the term under federal law. The Commissioner then applies various rules of statutory construction to buttress his theory. Perhaps most significantly, he argues that application of the purported affirmative entitlement in subsection (g) nullifies any "driver" exemption that might apply under section 31–76i(a).

Not surprisingly, Chemlawn raises various challenges to the Commissioner's contentions. In general, Chemlawn argues that no enhanced reading should be attributed to "outside salesmen" in subsection (g) because the term has the same meaning in subsection (f) as it does in (g). The thrust of Chemlawn's argument, however, is that any conceivable interpretation of the "outside salesmen" term has no bearing on the defendant's unrefuted entitlement to a "driver" exemption under both federal and state law. Put another way, the defendant contends that the "driver" and "outside salesmen" exemptions are mutually exclusive and that a failure to qualify for one does not preclude favorable consideration under the other.

The linchpin in the Commissioner's argument is that different meanings must be ascribed to the use of "outside salesman" in section 31–76i(f) and "outside salesmen" in section 31–76i(g). From that first principle flows the plaintiff's affirmative entitlement theory and eventual conclusion that the entitlement envelopes and nullifies the "driver" exemption contained in section 31–

---

**6.** Despite the Commissioner's assumption to the contrary, it is not at all clear that Chemlawn's specialist are "outside salesmen" within any recognized sense of the word. Moreover, Chemlawn does not seek an "outside salesmen" exemption under either federal or state law. Rather than engage in a protracted analysis

about whether the parties' stipulated facts support such exceptions, the court will assume for the sake of argument that the specialists are outside salesmen. This finding merely aids the court in demonstrating the error in the plaintiff's affirmative entitlement theory.

76i(a). At first reading—and, admittedly, even on a second or third—the references to outside salesman/salesmen in subsections (f) and (g) appear to be in irreconcilable conflict. The terms prove consonant, however, in the light cast by the following background information.

Before 1973, the meaning of "outside salesman" in subsection (f) was circumscribed by regulations issued by the state labor commissioner. Then, the statute created an overtime exemption for an outside salesman "as defined in the regulations of the *labor commissioner issued pursuant to section 31-60 who receives a weekly salary of not less than one hundred times the minimum hourly rate applicable to him under section 31-58.*" Conn.Gen. Stat. Section 31-76i(f) (emphasis added). 1973 Conn.Acts. 73-82 (Reg.Sess.) ("Public Act 73-82") amended (f) by substituting "Federal Fair Labor Standards Act" for the language underscored above. Thus, the FLSA became the yardstick by which the term "outside salesman" would be construed.

The legislative history behind the 1973 amendment to (f) is rather sparse, but it makes clear that the amendment was enacted in response to a Connecticut Supreme Court case, *Davenport Taxi, Inc. v. Labor Commissioner,* 164 Conn. 233, 319 A.2d 386 (1973), decided two months before the amendment was passed. *See* 16 Conn.H.R. Proc., Pt. 6, 1973 Sess., 2628-29 (Apr. 5, 1973) (remarks of Rep. Wagner). In *Davenport,* the court concluded that "Congress intended the FLSA to be exclusive except for those instances under 29 U.S.C. Section 218 and the exemptions provided by 29 U.S.C. Section 213...." 164 Conn. at 237, 319 A.2d at 388. The court read section 218 as

allow[ing] state laws to apply to that part of interstate commerce covered by the FLSA only where the state hour and wage provisions are more beneficial to the laborer than those in the federal act. Had Congress intended that the states

have concurrent jurisdiction to enforce state laws respecting the domain of interstate commerce covered by the Act we believe it would not have thus specifically limited section 218 to instances where the state minimum wage is higher and the state maximum workweek is lower than wages and hours provided by the FLSA.

*Id.* at 240, 319 A.2d at 389.

After *Davenport,* the legislature sought to correct a perceived conflict between the state exception and the more beneficial federal exception for "outside salesmen" contained in 29 U.S. Section 213(a)(1).[7] Representative Wagner stated during floor debate:

This bill [Public Act 73-82] affects [sic; effects] corrections to our current Statutes bringing them into conformity with federal law and a recent decision of the Connecticut Supreme Court.... The bill we have in front of us involves outside salesmen who are subject to the Fair Labor Standards Act and in which the Congress of the United States has already enacted Statutes. In accordance with our own Supreme court decision, in accordance with U.S. Supreme Court decisions, we are in violation of [ ...] we have an unconstitutional situation at this point. The Congress has spoken. They have preempted us. This statute removes the outside salesmen from our Statutes and makes them subject to the Fair Labor Standards Act criteria, clears up the ambiguity.

16 Conn.H.R.Proc. at 2628-29.

In addition to modifying subsection (f), Public Act 73-82 also amended subsection (g) of 31-76i by adding the "except outside salesmen" language from which the Commissioner constructs his affirmative entitlement theory. Subsection (g)—set out above—is strikingly similar, though not identical, to 29 U.S.C. Section 207(i), which relieves an employer from paying overtime compensation to certain employees of retail

---

7. That provision reads in relevant part: "The provisions of ... section 207 of this title shall not apply with respect to—(1) any employee employed ... in the capacity of outside sales-

man [as the term is defined by regulations of the Secretary of Labor]." 29 U.S.C. Section 213(a).

or service establishments who are paid primarily on the basis of commissions. Subsection 207(i) reads:

No employer shall be deemed to have violated [section 207(a)] of this section by employing an employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under section 206 of this title, and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services. In determining the proportion of compensation representing commissions, all earnings resulting from the application of a bona fide commission rate shall be deemed commissions on goods or services without regard to whether the computed commissions exceed the draw or guarantee.

28 U.S.C. Section 207(i). The Secretary of Labor has set forth examples of the types of employees to which the section 207(i) exemption applies:

These employees are generally employed in so-called 'big ticket' departments and those establishments or parts of establishments where commission methods of payment traditionally have been used; typically those dealing in furniture, bedding and home furnishings, floor coverings, draperies, major appliances, musical instruments, radios and television, men's clothing, women's ready to wear, shoes, corsets, home insulation, and various home custom orders.

29 C.F.R. Section 779.414.

Both section 207(i) and section 31–76i are laden with FLSA terms of art, and as permitted by 29 U.S.C. Section 218(a), the Connecticut legislature has chosen to make the state exemption broader in some respects than its federal counterpart. While 207(i) is limited to "any employee of a retail or service establishment" who meets the other two criteria set out in the statute, 31–76i(g)

encompasses "any employee" receiving commissions or goods and services within the three criteria in the statute. Since 1973 subsection (g) has imposed one other restriction: A commission employee satisfying the three restrictions may not be an "outside salesmen." Thus, in enacting Public Act 73–82, the Connecticut legislature modified (f) so that it comported with applicable federal law and altered (g) by removing outside salesmen from its scope.

There is little, if any, overlap between the federal exemptions for outside salesmen and "commission" salesmen, contained in 29 U.S.C. Sections 213(a)(1) and 207(i), respectively. Because the impetus behind Public Act 73–82 was to mold the Connecticut exceptions into compliance with federal law, it seems reasonable to conclude that the 1973 alterations in subsections (f) and (g) were intended to obviate the overlap that existed between them in their pre-amendment forms. The legislative history supports this conclusion:

While the bill is somewhat technical in nature it does, in effect, bring the current Statutory Law of Connecticut into line with the Davenport v. Labor Commissioner decision. It further changes the definition of outside salesmen so that our State Statute would indeed be in conformity with the federal Fair Labor Standards Act and makes one further change. It excepts outside salesmen, as I understand it, from the operation of 3176I[g] *because such salesmen are already exempted under 3176IF.*

16 Conn.H.R.Proc. at 2629–30 (remarks of Rep. Kennelly) (emphasis added).[8] Clearly, the legislature never intended separate meanings for the outside salesman/salesmen terms used in subsections (f) and (g), as evidenced by Representative Kennelly's use of the phrase "such salesmen" in the above-quoted passage. To be sure, the "except outside salesmen" addition to subsection (g) is inartful and creates an apparent conflict when read in conjunction with subsection (f). But there is no inconsisten-

---

**8.** When making reference to "3176I," Representative Kennelly must have been speaking about section 31–76i(g) because there is no other refer-

ence to outside salesmen in section 31–76i except in subsections (f) and (g).

cy between the subsections when federal law and the legislative history of P.A. 73–82 are employed as aids in their statutory construction. Moreover, there is nothing in these aids that would serve as a foundation for the Commissioner's affirmative entitlement theory.

The court concludes that neither subsection (f) nor (g) of section 31–76i has a bearing on Chemlawn's entitlement to a "driver" exemption under either federal or state law.[9]

### Conclusion

For the foregoing reasons, the plaintiff's motion for summary judgment is denied and the defendant's is granted. The Clerk of the court is directed to enter summary judgment for Chemlawn pursuant to Rule 56, Fed.R.Civ.P.

---

**9.** Because Chemlawn is entitled to an exception from the FLSA's overtime compensation requirement, the court declines to address issues raised by the parties that would have been relevant only if the Commissioner had prevailed.