COLBECK, Appellant, v. DAIRYLAND CREAMERY CO., Respondent

(17 N. W.2d 262)

(File No. 8665. Opinion filed January 12, 1945.)
Rehearing Denied March 9, 1945.

**Stordahl & May,** of Sioux Falls, for Appellant.
**Bailey, Voorhees, Woods & Fuller,** of Sioux Falls, for Respondent.

RUDOLPH, Judge.

Plaintiff, during the times here involved, was an employee of the defendant. The action is brought under the Fair Labor Standards Act of 1938, Ch. 676, 52 Stat. 1060, 29 U. S. C. A. § 201 et seq., to recover payment for alleged overtime worked by plaintiff. Specifically the action is based upon Section 7(a) of the Act which provides:

"(a) No employer shall, except as otherwise provided in this section, employ any of his employees who is engaged in commerce or in the production of goods for commerce—.

"(1) for a workweek longer than forty-four hours during the first year from the effective date of this section,

"(2) for a workweek longer than forty-two hours during the second year from such date, or

"(3) for a workweek longer than forty hours after the expiration of the second year from such date, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

The facts disclose that the defendant is engaged in the dairy and creamery business at Sioux Falls and a large part of its business consists of the manufacture and sale of ice cream. In the sale of its ice cream and other products the defendant owns a large number of refrigeration cabinets which it has placed in the stores of its customers in the states of South Dakota, Minnesota, Iowa and Nebraska. The defendant also owns and maintains three trucks which are equipped with refrigeration units and which are used to deliver the ice cream and other frozen products to its customers located in the several states. The defendant maintains at Bonesteel, South Dakota, a refrigeration plant where it stores ice cream and other products for the purpose of later shipment in South Dakota and Nebraska. The plaintiff's work is described in the evidence as that of a refrigerator service man. He serviced the refrigeration equipment located in the different stores in the various states and in the storage plant at Bonesteel. He also serviced and maintained the refrigeration equipment on the three trucks. He did not service or work upon any of the refrigeration equipment in defendant's principal plant at Sioux Falls. Plaintiff checked the refrigeration equipment on the trucks every night while he was in Sioux Falls. Part of plaintiff's work consisted of traveling over the territory and servicing the different units but he was in Sioux Falls every week and testified that the trucks were always checked and serviced at least twice each week. Plaintiff was not paid on an hourly basis, but on the basis of a flat monthly salary.

This monthly salary was substantially higher than the salary of another employee similarly engaged and the higher rate was paid to plaintiff to compensate him for overtime and for hours put in by him in excess of the number of hours considered the normal workweek. We believe this statement of facts sufficient for our present purpose. Other essential facts will be stated in connection with the discussion of the issues presented. The trial court determined that the Act was not applicable to plaintiff's employment and dismissed the complaint. The plaintiff has appealed.

 The first question presented is whether the plaintiff was engaged in interstate commerce or in the production of goods for commerce within the meaning of the Act. In so far as plaintiff's work consisted of traversing state lines and servicing the equipment located in states other than South Dakota, and in so far as his work consisted of servicing the refrigeration equipment on the trucks used to· transport the goods in interstate commerce, and in servicing the equipment at Bonesteel where goods intended to move in interstate commerce were stored, we hold that his work was within the coverage of the Act. A. B. Kirschbaum Co. v. Walling, 316 U. S. 517, 62 S. Ct. 1116, 86 L. Ed. 1638; Walling v. Southern Package Corp., 320 U. S. 540, 64 S. Ct. 320. It appears, therefore, that plaintiff worked on interstate as well as intrastate business, and that no attempt was made to distinguish between the two in the payment of wages. In determining the applicability of the Act the work week is to be taken as the standard. If an employee during any work week is engaged in interstate commerce, he is entitled to the benefits of the Act, and this is so even if during that week the employee is also engaged in intrastate work. It might be that if the work covered by the Act during any work week was so small in amount as to fall under the rule of de minimus non curat lex the Act would not apply, but with this we are not concerned as the record discloses that plaintiff's work within the coverage of the Act was substantial each week. Fleming v. Knox et al., D. C., 42 F. Supp. 948; Holland v. Amoskeag Mach. Co., 44 F. Supp. 884; Walling v. Mutual Wholesale Food & Supply Co. et al., D. C., 46

F. Supp. 939; Walling v. Jacksonville Paper Co., 317 U. S. 564, 63 S. Ct. 332, 87 L. Ed. 460.

■ The Act by its terms exempts certain employees from its coverage. Respondent contends that appellant's work as disclosed by the record was such that it placed appellant within certain of the exemptions contained in the Act. It is held very generally that these exemptions must be strictly construed against those claiming them. The Circuit Court of Appeals of the Eighth Circuit in the case of Helena Glendale Ferry Co. v. Walling, 132 F. 2d 616, 619, summarized the holdings as follows:

"That it was the intention of Congress to include within the protection of the Fair Labor Standards Act of 1938, every employee engaged in commerce or in production for commerce within the broad scope of those activities expressed in the Act, is no longer open to doubt. Fleming v. Hawkeye Pearl Button Co., 8 Cir. 113 F. 2d 52, 56; Bowie v. Gonzalez 1 Cir., 117 F. 2d 11, 16; Kirschbaum v. Walling, 316 U. S. 517, 62 S. Ct. 1116, 86 L. Ed. 1638; Warren-Bradshaw Drilling Co. v. Hall, [317 U. S. 88], 63 S. Ct. 125, 87 L. Ed. [83], decided November 9, 1942. The Act is remedial and must be given a liberal construction in accordance with its obvious intent and purpose. 'We must assume that all employees in interstate commerce, so far as reasonably possible, should be made subject to the provisions of the Act.' Fleming v. Hawkeye Pearl Button Co., supra * * * . Those asserting in reference to any employee, an exemption under the Act, must establish the exemption as being both within the spirit and the letter of the statute. Bowie v. Gonzalez, supra. Since the statute is remedial, and by its terms includes every employer and every employee coming within the broad scope of its coverage, the section granting exemptions is to be construed strictly against those claiming them."

■ ■ Respondent contends that appellant falls within the exemption contained in Sec. 13(b) of the Act. This section, so far as material, provides: "The provisions of section 7 shall not apply with respect to (1) any employee with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of ser-

vice pursuant to the provisions of section 204 of the Motor Carrier Act, 1935."

Section 204(a) of the Motor Carrier Act provides, so far as material, that it shall be the duty of the Interstate Commerce Commission, "(3) To establish for private carriers of property by motor vehicle, if need therefor is found, reasonable requirements to promote safety of operation, and to that end prescribe qualifications and maximum hours of service of employees, * * *". 49 U.S.C.A. § 304(a) (3).

The exemption contained in 13(b) is applicable to the employees over whom the Interstate Commerce Commission has jurisdiction without regard to whether that Commission has acted under the power conferred by Sec. 204(a) (3) of the Motor Carrier Act. Southland Gasoline Co. v. Bayley et al., 319 U. S. 44, 63 S. Ct. 917, 87 L. Ed. 1244. However, the jurisdiction of the Interstate Commerce Commission is limited to employees whose employment directly affects safety of operation of motor vehicles regulated by the Act. United States of America v. American Trucking Associations, Inc., et al., 310 U. S. 534, 60 S. Ct. 1059, 84 L. Ed. 1345; Anuchick v. Transamerican Freight Lines Inc., D. C., 46 F. Supp. 861.

The facts disclose that on two different occasions during a period of several years the refrigeration equipment on the trucks exploded. One of these explosions occurred while the equipment was being improperly serviced, and the other at a time when the truck was parked. There was also testimony that if the equipment exploded while the truck was being driven on the road it was perhaps possible for escaping gas to harm passing motorists, but no one testifying had ever heard of or known of an explosion happening while the trucks were being driven, and even if such explosion occurred the possibility of injury or harm to anyone on the highway was thought remote. Relying upon this testimony, respondent contends that while engaged in servicing the equipment on the trucks the appellant fell within the exception contained in Sec. 13(b), in that his work affected the safety of operation of the motor vehicle. Primarily the work of appellant in servicing the trucks was directed toward the preservation of the frozen goods being

transported. If his work in any manner affected safety of operation of the motor vehicle it was only incidental, and we are convinced too remote to fall within the exemption 13(b). In the case of Anuchick v. Transamerican Freight Lines, D. C., 46 F. Supp. 861, 864, the court was confronted with a contention similar to that made by respondent. The work involved was the repair and rebuilding of truck bodies. The court said: "We believe that all plaintiffs in No. 2830 whether engaged in manufacturing or building new bodies or only repairing used or damaged trucks, trailers or semi-trailers are primarily not engaged in the safety of operation of trucks as trucks; their main job is the safety of the merchandise as merchandise. * * * They make it possible for defendant to properly carry the load. As for example building in refrigeration units. Certainly whether a truck can carry butter, beef and eggs without spoiling doesn't 'affect the safety of operation'. Technically there isn't any employee of a transportation company that isn't indirectly doing work affecting the safety of operation but we believe the Interstate Commerce Commission had a definite thought in mind in rendering its decision. That is one reason it used the world 'directly'."

We are of the opinion that appellant's work on the refrigeration equipment on the truck did not affect safety of operation so as to place his employment under the jurisdiction of the Interstate Commerce Commission.

To reach his destination in the various states where it was necessary to work appellant drove a light truck belonging to respondent, and carried in the truck necessary tools. It might be that while driving this truck appellant was engaged in work affecting safety of operation. But the operation of the truck was only for the purpose of getting appellant to the location of his work which had nothing to do with safety of operation of motor vehicles. We do not believe it was the intention of Congress that two separate agencies should regulate the working hours of an employee while engaged in a single occupation during the work week. We believe that it is necessary to determine the nature of the occupation in which the employee is engaged. If the nature of that occupation is such that it affects the safety of opera-

tion of motor vehicles the Interstate Commerce Commission should regulate the hours, even though there are some details of the work performed which do not affect safety of operation. On the other hand, if the nature of the employee's occupation is such that it does not affect safety of operation of motor vehicles, the hours should be regulated under the Fair Labor Standards Act, even though some detail of the work might as an incident affect the safety of operation of motor vehicles. Any other construction of the two acts, we believe, would lead to hopeless confusion and in a measure defeat the purposes of the acts. Appellant was a refrigerator service man. His occupation was servicing the equipment belonging to respondent. The operation of the light truck was simply incidental to appellant's occupation, and at the most consumed only a small part of his working time. Under these circumstances we do not believe the exemption contained in 13(b) is applicable to appellant. Hutchinson v. William C .Berry, Inc., D. C., 50 F. Supp. 292.

■ ■ Sec. 7(c) of the Act provides in part: "In the case of an employer engaged in the first processing of milk, whey, skimmed milk, or cream into dairy products, * * * the provisions of subsection (a) shall not apply to his employees in any place of employment where he is so engaged."

It is sought to bring appellant within this exemption. Sec. 7(c) does not exempt industries from the overtime provissions of the Act, but only the specific processes therein mentioned. Hendricks v. Di Giorgio Fruit Corp., D. C., 49 F. Supp. 573; Walling v. De Soto Creamery & Produce Co., D. C., 51 F. Supp. 938; Shain v. Armour & Co., D. C., 50 F. Supp. 907; Fleming v. Swift & Co., D. C., 41 F. Supp. 825; Bowie et al. v. Gonzalez et al., 1 Cir., 117 F. 2d 11; Walling v. Swift & Co., 7 Cir., 131 F.2d 249. The facts disclose that appellant did not work in the plant or upon any equipment where the ice cream and other products were made. Appellant's work consisted entirely of servicing equipment used in the transportation, distribution and sale of the ice cream and other products after the processing had been completed. Appellant was not engaged in "first processing" within the meaning of Sec. 7(c).

■ Another exemption which apparently influenced the trial court's decision is found in Sec. 13(a) (10) of the Act which excludes from the overtime provisions of the Act "any individual employed within the area of production (as defined by the Administrator), engaged in handling, packing, storing, ginning, compressing, pasteurizing, drying, preparing in their raw or natural state, or canning of agricultural or horticultural commodities for market, or in making cheese or butter or other dairy products." We think it clear that appellant was not engaged in handling, etc., agricultural commodities in "their raw or natural state", nor was he engaged in the "making" of any dairy product. 29 U. S. C. A. § 213(a) (10).

■ As stated above, the record discloses and the trial court found that appellant was not paid on an hourly basis, but on the basis of a flat monthly salary, which was to compensate him for all time that he worked including hours in excess of the normal work week. This method of payment is not in any material respect different from the method of payment of Missel as disclosed in the case of Overnight Motor Transportation Co. Inc. v. Missel, 316 U. S. 572, 62 S. Ct. 1216, 86 L. Ed. 1682. The facts in that case showed that Missel's hours fluctuated each week, with a maximum of 80 hours for each of two weeks. Missel was paid on a weekly basis, which was to compensate him for all time he worked. The Supreme Court held that such a method of payment would not satisfy the requirement of the Act as to payment for overtime. The court further held that under such a method of payment the "regular rate" upon which to determine the rate of pay for overtime was to be computed by dividing the weekly wage by the number of hours worked each week, and that all hours worked during the week in excess of the work week provided by the Act should be paid for at the rate of one and a half times the quotient thus obtained. Following and construing the decision in the Missel case, the Circuit Court of Appeals, Seventh Circuit, held that "The payment of a fixed salary regardless of number of hours worked in a week does not satisfy overtime requirements of the Fair Labor Standards Act, notwithstanding that such salary equals or exceeds statutory minimum for

regular time plus time and a half for overtime, for hours actually worked, and notwithstanding intention of parties that fixed salary shall cover both regular and overtime work." Walling v. Stone, 7 Cir., 131 F.2d 461.

On February 1, 1940, the respondent and the union of which appellant was a member entered into a written agreement wherein the minimum monthly salary for the position held by appellant was fixed. This agreement further provided that 208 hours should constitute a month's work and that overtime should be paid for at the rate of straight time. It appears that appellant's salary was fixed at a rate considerably higher than the rate attached to a position doing similar work. The record fairly establishes, and the trial court found, that this higher rate was paid in lieu of overtime. Appellant himself testified that he "wasn't punching the clock" and that he received and wanted more money "because the other fellows were getting overtime." However, it must be held, because of the decision of the Supreme Court in the Missel case, that notwithstanding the intention of appellant and respondent that the fixed monthly salary should cover overtime, the payment of such salary does not satisfy the overtime requirements of the Fair Labor Standards Act. But we are convinced, that in the light of this record and especially in the light of appellant's testimony, that the "regular rate" upon which to base appellant's overtime pay under the Act, should not be determined subsequent to February 1, 1940 by using the 208 hour month as a basis, but rather such rate should be determined both before and after the execution of the union contract as Missel's "regular rate" was determined by the Supreme Court, i. e., by dividing appellant's weekly wage by the number of hours actually worked each week.

The judgment appealed from is reversed.

POLLEY, ROBERTS, and SMITH, JJ., concur.

SICKEL, J., dissents.