GARNER, Respondent v. WILLERS et al., Appellants
(68 N. W.2d 900)
(File No. 9433. Opinion filed March 9, 1955)

**Henry C. Mundt and Acie W. Matthews,** Sioux Falls, for Plaintiff and Respondent.

**Roy E. Willy, John E. Burke,** Sioux Falls, for Defendants and Appellants.

SICKEL, J. This is an action brought by Lester R. Garner, plaintiff, against Leone L. Willers and Clifford F. Willers, doing business as Willers' Truck Service, defendants, to recover compensation for his employment in excess of forty hours per week, at the rate of one and one-half times the minimum wage provided by the Fair Labor Standards Act of 1938, as amended by Ch. 736, § 6, 63 Stat. 912, Title 29 U.S.C.A. § 206. The circuit court found for plaintiff and entered judgment in his favor for overtime compensation in the sum of $895.11, liquidated damages in an equal amount, attorneys' fees for $50 and the costs of the action, and defendants appealed.

The judgment of the circuit court is founded upon the following statues:

The Fair Labor Standards Act, supra, provides: "§ 6 Minimum wages; effective date (a) Every employer shall pay to each of his employees who is engaged in commerce or in the production of goods for commerce wages at the follow-rates—(1) Not less than 75 cents an hour;".

The maximum hours are regulated by the Fair Labor Standards Act, § 7, which provides: "§ 7(a) Except as otherwise provided in this section, no employer shall employ any of his employees who is engaged in commerce or in the production of goods for commerce for a workweek longer than forty hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

Section 16, Fair Labor Standards Act, provides that any employer who violates § 6 or 7 thereof shall be liable to the employee affected in the amount of the unpaid minimum wages, or their unpaid overtime compensation and an additional equal amount as liquidated damages; also reasonable attorneys' fees and costs.

Defendants operated as a motor carrier, and were engaged in interstate commerce under the authority of the Interstate Commerce Commission. Plaintiff was employed by them in their business from January 8, 1950 until August 13, 1952. The weekly wages paid to plaintiff exceeded the minimum wage for a forty hour week, and the overtime has been established in this action and paid at the rate of 75¢ per hour. The amount in controversy is the additional half time pay for overtime, plus the penalty and the costs.

Appellants contend that the Fair Labor Standards Act, § 7(a), quoted above, does not apply to common carriers by motor vehicles, in interstate commerce, and which are regulated by the Interstate Commerce Commission. In support of this contention they cite the exception contained in the Fair Labor Standards Act § 13(b) (1) which reads as follows: "(b) The provisions of section 207 of this title shall not apply with respect to (1) any employee with respect to

whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to the provisions of section 304 of Title 49; * * *." The power of the Interstate Commerce Commission conferred by § 304 of the Motor Carrier Act is: "(1) To regulate common carriers by motor vehicle as provided in this chapter, and to that end the Commission may establish * * * qualifications and maximum hours of service of employees, and safety of operation and equipment."

The case of United States v. American Trucking Associations, 310 U.S. 534, 60 S.Ct. 1059, 1067, 84 L.Ed 1345, was one which required the determination of the power of the Interstate Commerce Commission under the Motor Carrier Act of 1935, to establish reasonable requirements with respect to the qualifications and maximum hours of service of employees of motor carriers, other than employees whose duties "affect safety of operation". The question involved was the interpretation of the Fair Labor Standards Act, § 13(b) (1) which we have quoted above. The opinion states: "It is important to remember that the Commission has three times concluded that its authority was limited to securing safety of operation. The first interpretation was made on December 29, 1937, when the Commission stated: '* * * until the Congress shall have given us a more particular and definite command in the premises, we shall limit our regulations concerning maximum hours of service to those employees whose functions in the operation of motor vehicles make such regulations desirable because of safety considerations.' This expression was half a year old when Congress enacted the Fair Labor Standards Act with the exemption of § 13(b) (1)". 29 U.S.C.A. § 213(b) (1).

The Supreme Court stated: "Our conclusion, in view of the circumstances set out in this opinion, is that the meaning of employees in Section 204(a) (1) and (2) is limited to those employees whose activities affect the safety of operation. The Commission has no jurisdiction to regulate the qualifications or hours of service of any others".

The interpretation of the exclusion contained in the Fair Labor Standards Act, § 13(b) (1) and of Title 49, § 304(1) of

the Motor Carrier Act was again before the Supreme Court in Levinson v. Spector Motor Service, 330 U.S. 649, 67 S.Ct. 931, 937, 91 L.Ed. 1158. The case involved the question of whether the Interstate Commerce Commission has power under the Motor Carrier Act to establish qualifications and maximum hours of service with respect to a "checker" or "terminal foreman", a substantial part of whose activities consists in doing or directing work of loading freight for an interstate motor carrier. The court confirmed previous decisions to the effect that employees under § 204(a) (1) (2) " '* * * is limited to those employees whose activities affect the safety of operation. The Commission has no jurisdiction to regulate the qualifications or hours of service of any others' ".

The Levinson case, supra, cites Southland Gasoline Co. v. Bayley, 319 U. S. 44, 63 S.Ct. 917, 87 L.Ed. 1244, where it was held that "* * * under § 13(b) (1) of the Fair Labor Standards Act, the Commission's mere possession of that power, whether exercised or not, necessarily excluded all employees, with respect to whom the power existed, from the benefits of the compulsory overtime provisions of § 7 of that Act".

The opinion in the Levinson case then observes that "The present case involves a comparable situation in that the Commission has found here that it has the power to establish qualifications and maximum hours of service for those doing the work of loaders for common or contract motor carriers or private motor carriers of property, but it has not found it advisable, as yet, to establish qualifications and maximum hours of service for that work.

"The logic of the situation is that Congress, as a primary consideration, has preserved intact the safety program which it and the Interstate Commerce Commission have been developing for motor carriers since 1936. To do this, Congress has prohibited the overlapping of the jurisdiction of the Administrator of the Wage and Hour Division, United States Department of Labor, with that of the Interstate Commerce Commission as to maximum hours of service. Congress might have done otherwise. It might have permitted both Acts to apply. There is no necessary inconsistency between enforc-

ing rigid maximum hours of service for safety purposes and at the same time, within those limitations, requiring compliance with the increased rates of pay for overtime work done in excess of the limits set in § 7 of the Fair Labor Standards Act. Such overlapping, however, has not been authorized by Congress and it remains for us to give full effect to the safety program to which Congress has attached primary importance, even to the corresponding exclusion by Congress of certain employees from the benefits of the compulsory overtime pay provisions of the Fair Labor Standards Act. When examined from the point of view of the Motor Carrier Act alone, much light is thrown on the meaning of its § 204 by the interpretation given to it and the applications made of it by the Interstate Commerce Commission."

Consider also the decision of this court in Colbeck v. Dairyland Creamery Co., 70 S.D. 283, 17 N.W.2d 262.

Plaintiff in this case was a full-time employee, and under the rule applied in the Levinson Case it was necessary that he devote a "substantial part" of his time to activities directly affecting safety of operation in order to be subject to the power of the Interstate Commerce Commission to establish qualifications and maximum hours of service with respect to him. Pyramid Motors Freight Corp. v. Ispass, 330 U.S. 695, 67 S.Ct. 954, 91 L.Ed. 1184.

The court found, and it appears from the evidence, that the plaintiff was not a mechanic and performed none of the services of a mechanic. His services did not affect safety of operation. Morris v. McComb, 332 U.S. 422, 68 S.Ct. 131, 92 L.Ed. 44, 51. Therefore, the Interstate Commerce Commission did not have the power to establish qualifications and the maximum hours of service as to him under the provisions of the Motor Carrier Act. He was subject to the wage and hour provisions of the Fair Labor Standards Act to which we have referred.

The circuit court also awarded to plaintiff liquidated damages in the amount of his unpaid minimum wages and his overtime compensation according to the provisions of the Fair Labor Standards Act, § 16(b). Appellants contend that their actions in withholding such payment were in good

faith and that they had reasonable grounds for believing that the payments made were not in violation of the Fair Labor Standards Act. Section 260 of 29 U.S.C.A. provides that: "* * * if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216(b) of this title."

■■ The general rule adopted by the federal courts in interpreting this statute is that the above language imposes: "* * * upon the delinquent employer who would escape the payment of liquidated damages a plain and substantial burden of persuading the court by proof that his failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict." Rothman v. Publicker Industries, 3 Cir., 201 F.2d 618, 620. Further consider Thompson v. F. W. Stock & Sons, Inc., D. C., 93 F.Supp. 213; Landaas v. Canister Co., D.C., 91 F. Supp. 620; Rankin v. Jonathan Logan, Inc., D.C., 98 F.Supp. 1. In this case the defendants neither plead nor made any attempt to prove good faith in their interpretation of the statute, nor reasonable grounds for failure to comply with its provisions.

■ It also appears that appellants paid the regular weekly compensation for two weeks of vacation time. They contend that these payments were made for work not performed, and that the respondent was not entitled to receive the money. No agreement as to vacation time is shown by the record. Apparently the payment was voluntarily made, and therefore cannot now be applied as a credit on the overtime allowed by the judgment.

Judgment affirmed.

All the Judges concur.