**James Randolph BOWE, Plaintiff,**

v.

**SMC ELECTRICAL PRODUCTS, INC., Defendant.**

**Civil Action No. 95–K–1439.**

United States District Court, D. Colorado.

July 29, 1996.

J. Keith Killian, James P. Guthro, Grand Junction, CO, for plaintiff.

L. Anthony George, Jackson & Kelly, Denver, CO, Karen H. Miller, Joseph P. Miller, Charleston, WV, for defendant.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

James Randolph Bowe sues SMC Electrical Products, Inc. ("SMC"), his former employer, claiming wrongful failure to pay overtime compensation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207, and Colorado Minimum Wage Order No. 19 and under a breach of contract theory. Bowe also sues SMC for wrongful discharge and retaliatory discharge. SMC moves for summary judgment with respect to all claims, including breach of contract, and has filed a counterclaim for abuse of process, fraud and breach of fiduciary duty. Bowe moves for partial summary judgment with respect to this counterclaim, and for summary judgment with regard to his claim for overtime compensation under 29 U.S.C. § 207.

### I. *UNDISPUTED FACTS.*

SMC, a West Virginia manufacturer of mining equipment, sells its products to companies in the western United States. James Bowe was employed as an SMC sales/service representative from 1981 to 1995, covering territory consisting of Colorado, Wyoming, Utah, Nevada, and New Mexico. Mr. Bowe

was the only employee maintaining a residence in Colorado, but occasionally specialists and management personnel worked with him at various customer sites, providing technical assistance. Mr. Bowe worked from his home, and SMC directed his activities, paid for his supplies, provided the car used in his work, and an "800" number by which he communicated with the company's headquarters. Bowe referred sales inquiries to the SMC headquarters. Until 1995, SMC utilized Triune, Inc., a Colorado company, as a distributor, maintaining an active inventory in Triune's warehouse.

## II. *SUMMARY JUDGMENT STANDARDS.*

Summary judgment is appropriate when the pleadings, affidavits, depositions, or admissions establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986).

 The facts presented, and appropriate inferences that may be drawn from them, must be construed in the light most favorable to the nonmoving party. *Id.* If a reasonable trier of fact could not return a verdict for the nonmoving party, summary judgment is proper. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

 The purpose of a summary judgment action is to determine whether trial is necessary. *White v. York Int'l Corp.,* 45 F.3d 357, 360 (10th Cir.1995) To avoid summary judgment, the nonmoving party therefore must refer to specific facts, beyond those in the pleadings, and demonstrate the existence of a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. Unsupported allegations without "any significant probative evidence tending to support the complaint" are insufficient, *id.,* as are conclusory assertions that factual disputes exist. *Anderson,* 477 U.S. at 247–48, 106

S.Ct. at 2509–10 (1986). Summary judgment will be granted against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

## III. *MERITS.*

### A. SMC's Motion for Summary Judgment and Bowe's Motion for Partial Summary Judgment.

1) *Exemption from overtime standards of the Fair Labor Standards Act ("FLSA") pursuant to the motor carrier exemption set forth in 29 U.S.C. § 213(b)(1).*

SMC moves for summary judgment on the grounds that it is exempt from FLSA overtime standards pursuant to the motor carrier exemption set forth in 29 U.S.C. § 213(b)(1). Bowe moves for partial summary judgment with respect to the FLSA on the grounds that he is entitled to overtime compensation pursuant to 29 U.S.C. § 207, and the motor carrier exemption does not apply.

The motor carrier exemption provides Section 207 (overtime compensation standards) shall not apply to "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of Section 3102 of Title 49." 29 U.S.C. § 213(b)(1).[1] Former Section 3102 of Revised Title 49 is set out with minor amendments as Section 31502 of Title 49. That section pertinently provides: "The Secretary of Transportation may prescribe requirements for— ... (2) qualifications and maximum hours of service of employees of ... a motor private carrier [sic], when needed to promote safety of operation." 49 U.S.C. § 31502(b)(2).

SMC contends Bowe's employment comes under the jurisdiction of the Secretary of Transportation pursuant to the Motor Carrier Act ("MCA"), 29 U.S.C. § 213(b)(1), be-

---

1. In 1966 Congress transferred the authority to regulate under section 304 (repealed) of the Motor Carrier Act from the Interstate Commerce Commission to the Department of Transportation. 49 U.S.C. § 1655(e)(6)(C).

cause the majority of his time was spent driving the company car in interstate commerce, traveling between his home and customers in several states. He carried tools, catalogs, and parts with him in his vehicle. Several times a year he delivered parts to customers or obtained parts from customers for warranty work.

SMC claims it qualifies as a "motor private carrier" which is defined as

> a person, other than a motor carrier, transporting property by motor vehicle when—(A) the transportation is as provided in section 10521(a)(1) and (2) of this title [i.e., in interstate commerce]; (B) the person is the owner, lessee, or bailee of the property being transported; and (C) the property is being transported for sale, lease, rent or bailment, or to further a commercial enterprise.

49 U.S.C. § 10102(17). SMC argues it is a motor private carrier because, through Bowe, it transported its property in interstate commerce to further its commercial enterprise.

SMC claims to qualify for the FLSA exemption because Bowe's work as a serviceman brought him under the MCA definition of "driver":

> ... [A]n individual who drives a motor vehicle in transportation which is, within the meaning of the Motor Carrier Act, in interstate ... commerce.... This definition does not require that the individual be engaged in such work at all times.... 'Drivers,' as thus officially defined, include ... so called 'driver-salesmen' who devote much of their time to selling goods rather than to activities affecting such safety of operation.

29 C.F.R. § 782.3(a).

SMC cites *Levinson v. Spector Motor Service,* 330 U.S. 649, 661, 67 S.Ct. 931, 938, 91 L.Ed. 1158 (1947), as authority that the overtime provisions of the FLSA do not apply where the Interstate Commerce Commission ("ICC") has the power to set maximum hours for workers. The Court limited the ICC's power over common, contract and private

carriers of property by motor vehicle to employees "affecting safety of operation by motor vehicles." *Id.* at 662, 67 S.Ct. at 938.

SMC also cites *Thomas v. Wichita Coca-Cola Bottling Co.,* 968 F.2d 1022, 1025–26 (10th Cir.), *cert. denied,* 506 U.S. 1013, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992), as authority for the application of the motor carrier exemption to the overtime provisions of the FLSA. The Tenth Circuit determined the relevant factual issue to be whether any of the employee's duties had a substantial effect on motor vehicle safety. *Id.* at 1025. SMC asserts a driver's duties are by their very nature safety affecting, and have been defined as such under the statute.[2]

SMC contends the failure of the Department of Transportation ("DOT") to exercise its authority to regulate lightweight vehicles (such as the passenger van Bowe drove for SMC) did not serve as a forfeiture of that power as Bowe suggests; rather the DOT specifically retained that power. *See Friedrich v. U.S. Computer Services,* 974 F.2d 409, 415 (3d Cir.1992) (holding that DOT expressly retained its power to regulate lightweight vehicles).

SMC asserts the material issue in determining the scope of the Secretary of Transportation's power is whether he has the power to regulate, if he so chooses. SMC cites the language of the pertinent regulation:

> The exemption is applicable to any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 204 of the Motor Carrier Act [now amended].... It is not material whether such qualifications and maximum hours of service have actually been established by the Secretary of Transportation; the controlling consideration is whether the employee comes within his power to do so. 29 C.F.R. § 782.1 (1995).

SMC also cites *Southland Gasoline Co. v. Bayley,* 319 U.S. 44, 47, 63 S.Ct. 917, 919, 87 L.Ed. 1244 (1943), where the Court held the

---

**2.** The work of drivers is included among the "activities of a character directly affecting the safety of operation of motor vehicles in the trans-portation on the public highways of passengers or property in interstate ... commerce...." 29 C.F.R. § 782.2 (1995).

ICC's power to regulate exists regardless of the need for such regulations. In addition, SMC cites the Tenth Circuit's holding in *Starrett v. Bruce*, 391 F.2d 320, 323 (10th Cir.), *cert. denied*, 393 U.S. 971, 89 S.Ct. 404, 21 L.Ed.2d 384 (1968):

It is the existence of the power to establish the qualifications and maximum hours of service pursuant to the provisions of section 204 of the Motor Carrier Act, rather than the conditions or qualifications established by the Interstate Commerce Commission in the exercise of that power that Congress has made the test as to whether or not section 7 of the Fair Labor Standards Act is applicable to employees.

SMC claims the fact that the Secretary has the power to regulate the employees of a private motor carrier brings it within the motor carrier exemption.

In response, Bowe maintains his employment at SMC did not come under the DOT's jurisdiction by virtue of the motor private carrier definition. The equipment which he carried consisted only of product manuals, personal tools, and supplies to facilitate the purpose of his travel, to repair or replace broken or defective parts. This equipment was not transported for sale, lease, or to further commercial enterprise of any kind, as required by the statute.

In its response to Bowe's motion, SMC cites *Friedrich*, 974 F.2d at 417, for its holding that employees who transported property essential to their job duties came within the MCA and were therefore exempt from the overtime requirements of the FLSA:

Because the plaintiffs transported tools, parts and equipment without which they could not have performed their duties ... the transportation of those items was an independent and essential reason for their service trips. Thus the tools, parts, and equipment constituted property within the meaning of the MCA.

Bowe asserts it is the character of the activity, not the percentage of time involved in the activity devoted to the safety of operation of work, that determines the actual need for the Secretary of Transportation's power to establish reasonable requirements with respect to the maximum number of hours, safety, etc. *See Peraro v. Chemlawn Services Corp.*, 692 F.Supp. 109, 114 (D.Conn.1988). In addition, "the Secretary's power wanes, and the employer's section 213(b) exemption consequently fades when the employer's interstate activities affecting the safety of interstate motor operations are de minimis." *Id.* at 113. Bowe maintains transportation of SMC property constituted a *de minimis* aspect of his actual job, which was repairing, replacing, and installing mine equipment.

SMC contends Bowe's reliance on *Peraro* is misplaced, because the court's holding is adverse to his argument. In *Peraro*, the court ruled carpet cleaning specialists who traveled interstate to perform their work were exempt from the FLSA overtime provisions under the motor carrier exemption. *Id.* at 114. The court stated that such a specialist who drives a specially equipped cleaning vehicle in interstate commerce "obviously affects the safety of such operations while he or she is driving." *Id.* at 113.

Bowe responds his employment can neither be characterized as that of a driver affecting interstate commerce, nor as directly affecting the safety of operation of motor vehicles on a public highway in the transportation of interstate commerce within the meaning of the MCA, because he seldom carried property in interstate commerce. SMC generally shipped parts directly to the customer for Bowe to install. Very rarely did SMC send parts to Bowe's residence. Transportation of property was incidental to Bowe's actual job duties and constituted a minimal aspect of his job.

In its response to Bowe's motion for partial summary judgment, SMC cites *Friedrich*, asserting Bowe falls under the MCA exemption, even though the primary purpose of his employment was not transportation, because his interstate driving affected safety on the highways. "Because their interstate operations affected safety on the highways, the plaintiffs fell within the MCA even though they were not employed primarily as carriers." *Friedrich*, 974 F.2d at 418.

In reply, Bowe cites *Colbeck v. Dairyland Creamery Co.*, 70 S.D. 283, 17 N.W.2d 262 (S.D.1945), where the facts were similar. A

light truck owned by the employer was driven by an employee in his work servicing equipment in several states, carrying with him the necessary tools. The court determined where the truck's only purpose was to transport the employee to the location of his work, such usage had nothing to do with safety of operation of motor vehicles. *Id.* at 290, 17 N.W.2d 262.

In *Colbeck* the court stated where the nature of the occupation does not affect safety of operation of motor vehicles, hours should be regulated under the FLSA, even though some detail of work might have an incidental effect on the safety of operation of motor vehicles. *Id.* at 291, 17 N.W.2d 262. Bowe asserts his duties were similar to those of the repairman in *Colbeck;* he operated the company van only to transport himself to his work location, which had nothing to do with safety of operation of motor vehicles.

According to the opinion letter submitted by Bowe's DOT expert, Kevin Edens, Bowe's electrical repair expertise was the reason for his trips. Transportation of SMC property did not constitute a distinct and definite reason for his trips, but was infrequent, de minimis and inadvertent. In addition, the character of Bowe's employment activity did not necessitate using the Secretary of Transportation's power to establish reasonable requirements with respect to qualifications, maximum hours of service, safety of operation and equipment. (Pl.'s V. Resp. Def.'s Mot.Summ.J., Ex. 5, Op. Letter dated March 28, 1996 at 2–3.)

SMC contends that because Bowe *could possibly* be required to transport its property in interstate commerce at some point, as a function of his employment, even if it constituted a minimal aspect of his job, he would qualify as an exempt employee for all the weeks he worked, under 29 C.F.R. § 782.2(b)(3), which states:

> ... if the bona fide duties of the job performed by the employee are ... such that he is ... called upon in the ordinary course of his work to perform, either regularly or from time to time, safety-affecting activities ... he comes within the exemption in all workweeks when he is employed at such job.

Bowe claims further that the Secretary of Transportation's election not to regulate lightweight vehicles acted as a waiver of his power to regulate those vehicles. However, he maintains, even should the power to regulate those vehicles be found to exist, the Secretary of Transportation does not have jurisdiction over Bowe because he is not a driver within the meaning of the MCA, and did not transport property in interstate commerce.

■ An FLSA exemption must be "narrowly construed, giving due regard to the plain meaning of statutory language and the intent of Congress." *Reich v. American Driver Service, Inc.,* 33 F.3d 1153, 1156 (9th Cir.1994) (quoting *Donovan v. Nekton,* 703 F.2d 1148, 1151 (9th Cir.1983)). An employer claiming an FLSA exemption has the burden of showing the exemption applies. *Donovan v. Nekton,* 703 F.2d at 1151. The person asserting the exemption must bring himself "clearly and unmistakably within the spirit and the letter of its terms." *Pugh v. Lindsay,* 206 F.2d 43, 46 (4th Cir.1953). It is generally held that the exemptions under the FLSA must be strictly construed against those claiming them. *Colbeck,* 70 S.D. at 287, 17 N.W.2d 262.

■ SMC has failed to provide documented records of Bowe's transportation of company property in interstate commerce. A genuine issue exists as to the material facts of how often Bowe carried property of SMC in interstate commerce and whether the transportation of property by Bowe constituted a minimal aspect of his job. Construing the exemption under the FLSA narrowly against SMC, these issues of fact preclude the entry of summary judgment in its favor because it has not shown clearly and unmistakably that the exemption applies. Accordingly, SMC has not established it is entitled to judgment as a matter of law. I therefore deny SMC's request for summary judgment on this issue.

With respect to Bowe's motion for partial summary judgment, construing the facts in the light most favorable to SMC, the same genuine issue exists as to the material facts. These issues of fact also preclude the entry

of summary judgment in Bowe's favor, because he failed to establish he is entitled to judgment as a matter of law. I deny Bowe's motion for partial summary judgment as well.

## B. SMC's motion for Summary Judgment.

### 1) *The Colorado Minimum Wage Order No. 19 is not applicable to MSC because its business does not comprise retail sales.*

SMC moves for summary judgment on the grounds that it does not fall within the coverage of Colorado Minimum Wage Order No. 19 ("MWO") promulgated pursuant to Colo. Rev.Stat. § 8–6–108 (1973) because the company is not engaged in retail sales. On its face, Minimum Wage Order No. 19 applies only to wages, hours, working conditions and procedures in the following industries: retail trade, food and beverage, public housekeeping, medical profession, beauty service, laundry and dry cleaning, and janitorial service.

According to SMC the sale of electrical and mining equipment is specifically excluded from the definition of merchandise that is sold at retail price. SMC cites federal regulations for the proposition that its operation is included as an exception to the retail trade category, because it is engaged in the "selling or servicing of construction, mining, manufacturing and industrial machinery...." 29 C.F.R. § 779.317 (1995). The federal regulations provide a definition of retail establishment as one which "sells goods ... to the general public." 29 C.F.R. § 779.318 (1995).

In addition, SMC cites case law defining retail establishments as businesses which sell merchandise to the ultimate consumer for personal use. *See Roland Electrical Co. v. Walling, Wage and Hour Administrator,* 326 U.S. 657, 667, 66 S.Ct. 413, 417–18, 90 L.Ed. 383 (1945). In *Roland* the Supreme Court found a corporation engaged in repairing and rebuilding electric motors for customers did not qualify as a retail establishment for the purposes of the FLSA exemption. *Roland Electrical Co.,* 326 U.S. at 678, 66 S.Ct. at 423. Businesses whose customers were commercial or industrial were not engaged in retail sales. *Id.*

SMC also cites *Idaho Sheet Metal Works, Inc. v. Wirtz,* 383 U.S. 190, 206–207, 86 S.Ct. 737, 747–48, 15 L.Ed.2d 694 (1966), where the Court held a sheet metal works business did not qualify as a retail operation because it met the exception set out by statute as "an establishment engaged in the sale and servicing or manufacturing machinery and manufacturing equipment used in the production of goods." SMC claims its business also constitutes manufacturing machinery and equipment used in the production of goods as was deemed non-retail in *Idaho Sheet Metal.*

Bowe opposes SMC's use of federal regulations in defining "retail." He cites the plain language of the MWO which defines retail trade industry as "... any industry, business, or establishment engaged in or concerned with the selling or offering for sale any commodity ... to the consumer in which 50% or more of the dollar volume of business results from retail sales." Minimum Wage Order No. 19, Paragraph 1, 7 Colo.Code Regs. § 1103–3 (1983). Bowe contends this definition refers to *any* business selling *any* product to *any* consumer, and does not limit the definition of retail consumer to one who uses a product for personal use.

Bowe further maintains commonly accepted definitions for the term "retail," also are not limited to personal use. He cites the definition of "retail" in Black's Law Dictionary: "(i) To sell by small quantities, in broken lots or parcels, not in bulk, directly to consumer ... (ii) A sale for final consumption in contrast to a sale for further sale or processing (i.e., wholesale)." Black's Law Dictionary 1315 (6th Ed.1990). SMC sells its products in small quantities directly to mines, to mass transit companies and even to DisneyWorld. Therefore, Bowe asserts, SMC qualifies as engaging in retail sales.

Bowe also claims Section Two of the Minimum Wage Order, *Exemptions,* which sets out specific exceptions for certain occupations or employees, lists no exception for either miners, or the mining industry; therefore, no exemption applies, and the mining industry must be included under Colorado law.

In addition, Bowe cites Paragraph 24 of the MWO which specifically states "When the Fair Labor Standards Act differs from Colorado law, the law providing more protection or setting the higher standard applies." Minimum Wage Order No. 19, Paragraph 24, 7 Colo.Code Regs. § 1103-3 (1983). Bowe contends it is not appropriate to interpret the MWO under federal case law and legislation. Because the MWO provides more protection by virtue of its broader definition of "retail," and sets a higher standard, the MWO should be the applicable standard.

Case law supports Bowe's position. In *Maldonado v. International Business Machines Corp.*, 56 F.R.D. 452, 455 (D.P.R. 1972), the court held federal law did not prevent the state from defining terms or exemptions differently, or more favorably to employees, than federal regulations would allow. The court in *Brennan v. State of N.J.*, 364 F.Supp. 156, 159–160 (D.N.J.1973), distinguished *Maldonado* as concerning the situation where the plaintiff employee probably would not have been entitled to compensation under federal law, but would be so entitled under local law. In these circumstances, the court applied the local law affording the more extensive coverage.

Bowe's situation is analogous to that in *Maldonado*. Applying the definition of "retail" used in federal regulations could preclude Bowe from maintaining his claim for overtime wages, but a strict application of the definition found in the state order itself does not preclude Bowe's claim.

■ Bowe contends because SMC does not present information as to what percentage of business its equipment sales comprise, nor does SMC claim that less than 50% of its products are sold to ultimate consumers, or that more than 50% of its products are sold to distributors, it has not shown it falls outside the definition of retail as set out in the MWO. I agree.

SMC has failed to establish that it is entitled to judgment as a matter of law on Bowe's claim under the Colorado Minimum Wage Order. I deny summary judgment in this regard.

### 2) *Statute of Limitations, Laches and Equitable Estoppel.*

SMC moves for summary judgment on the grounds that Bowe's breach of contract claim is barred by the statute of limitations, as well as the doctrines of laches and equitable estoppel.

Bowe alleges he entered into a verbal employment contract with SMC President, James Nash, on August 3, 1981, which included an agreement for overtime pay for any hours worked in excess of forty per week. According to Bowe, the original agreement also provided he could use "comp time" as compensation for overtime hours, which his supervisor encouraged him to do on a regular basis. Bowe then contends this original agreement was renewed on an annual basis when the parties discussed pay raises, creating a series of contracts, the last six of which would not be precluded under the statute of limitations.

SMC maintains Bowe's cause of action accrued in August, 1981, as soon as he became aware SMC was failing to pay him for overtime hours. SMC cites *Goeddel v. Aircraft Finance, Inc.*, 152 Colo. 419, 382 P.2d 812, 815 (1963), as authority that contract obligations accrue at the time of the failure to perform the required act under the contract: "[g]enerally a claim for relief in actions arising out of non-performance of contract obligations accrues at the time of the failure to do the thing required to be done under the contract."

SMC contends the alleged oral contract was breached in 1981 and is therefore barred by Colorado's general statute of limitations for breach of contract which is three years, or the six year limitation imposed for breach of contract involving a liquidated debt or an unliquidated, determinable amount of money. It asserts while Bowe's claim for overtime accrued in 1981, he did not file his claim until fourteen years later, well past the liberal six year limitation, and his claim is therefore time barred.

SMC asserts that even if the original oral contract were renegotiated on a yearly basis, the discussions concerning pay increases did not meet Colorado's requirement for mutual

consent of the parties with respect to the issue of overtime. Because the discussions were limited to salary increases, the parties could not have reached an agreement as to the implied overtime terms, regardless of whether those discussions constituted modifications to the original contract or completely new contracts.

In opposition, Bowe contends his annual salary discussions with SMC did constitute the requisite mutual consent for modifying contracts because consent to contract modification can be inferred from parties' conduct. *See Reynolds v. Farber,* 40 Colo.App. 467, 577 P.2d 318, 321 (1978). He maintains only one provision, namely salary, was modified and discussed; the other provisions remained unchanged. Bowe continued to receive "comp time" as payment for overtime work, to which SMC never objected. Therefore, Bowe maintains SMC's agreement to the contract modifications (i.e., salary increases) constituted an implicit consent to renewal of the original contract provisions.

Because Bowe received "comp time" under the original contract, he assumed he would also receive overtime payment under his renewed contract. Bowe contends SMC did not breach its contract until 1994 when he submitted his claim for overtime payment and was advised that the company would not honor the overtime provision of the agreement. Therefore he states his claim, filed in May, 1995, was brought within the time allowed by the statute of limitations.

The Magistrate Judge considered this issue with respect to SMC's motion to dismiss based on statute of limitations grounds. He found each annual contract for wage payments could be read as renewing the previous contract while amending the wage amount. After considering objections, I adopted the recommendation.

 In considering this issue in the context of summary judgment, I find a genuine issue of material fact exists as to whether the yearly salary discussions between the parties constituted a series of annual contracts, renewing the previous contract while amending the wage amount. This factual issue precludes entry of summary judgment on SMC's statute of limitations defense.

SMC further contends the doctrine of laches estops Bowe from asserting his overtime claim because he was aware of SMC's failure to pay overtime as early as 1981 but unreasonably and negligently failed to bring suit for 14 years. According to SMC, Bowe's acquiescence obscured the nature of the claim and acts of parties. Even in the event some of the alleged renegotiations were not barred by the statute of limitations, the pertinent details of the agreement arose with the original agreement in 1981, were never discussed again, and therefore are barred under the laches doctrine.

Bowe maintains he did not unreasonably delay filing his claim. He kept records of his overtime hours as SMC requested, and received "comp time" as payment for some of those hours. When SMC advised him in 1994 that it would not honor the overtime agreement, Bowe promptly filed his claim.

 SMC bears the burden of establishing the affirmative defense of laches. *See Subryan v. Regents of Univ. of Colo.,* 813 F.Supp 753, 756 (D.Colo.1993). SMC must establish there is no genuine issue of material fact that Bowe unreasonably delayed proceedings, and SMC was substantially prejudiced by the delay. *Id.* To establish material prejudice, SMC must show prejudicial change in the conditions of the parties. *Id.* Lapse of time alone, in the absence of injury, prejudice or disadvantage to the defendant will not constitute laches. *Brooks v. Bank of Boulder,* 911 F.Supp. 470, 477 (D.Colo.1996).

 I find SMC has not shown it has been injured, prejudiced or disadvantaged by Bowe's delay, and is therefore not entitled to summary judgment on the basis of the doctrine of laches.

 SMC also claims Bowe's conduct in failing to file a timely claim for overtime payments meets the four elements for equitable estoppel set forth by the Colorado Supreme Court in *Department of Health v. Donahue,* 690 P.2d 243, 247 (Colo.1984), namely 1) party to be estopped must know the facts, 2) this party must intend his conduct be acted upon or must so act that the

party asserting estoppel has a right to believe the other party's conduct is so intended, 3) party asserting estoppel must be ignorant of the true facts, 4) party asserting estoppel must rely on the other party's conduct to its injury. I consider each of these elements.

First, the party to be estopped must know the facts. SMC asserts Bowe knew it was not performing according to the agreement, but did not request payment for twelve years. Bowe claims he did not know SMC would not pay overtime until he was advised by the company in 1994. Because his "comp time" provision under the original contract had been honored, and some of his overtime hours were compensated in the form of "comp time" as well, he assumed the overtime provision would also be honored.

Second, the party to be estopped must act so the party asserting estoppel has a right to believe the other party's conduct was so intended. SMC maintains Bowe's conduct and silence gave SMC the right to believe the company did not owe him any overtime pay. Bowe asserts SMC was aware through his supervisor that Bowe consistently set off claims for accrued overtime with "comp time." Also, Bowe had been requested to record his overtime by SMC, which he continued to do, in the belief that the overtime provision of the original contract would be honored by SMC.

Third, the party asserting estoppel must be ignorant of the true facts. SMC maintains Bowe's silence and acceptance of more than three hundred paychecks led SMC to believe his paychecks were accurate, thereby preventing SMC from taking corrective action. Bowe asserts SMC cannot claim ignorance, because it was aware of the original agreement Bowe had made with its representatives, Nash & Herrell, and it was Herrell who authorized Bowe to take some overtime payment in the form of "comp time." (Pl.'s V. Resp.Def.'s Mot.Summ.J., Ex. 7, Herrell Dep. at 40–41.)

Finally, the party asserting estoppel must rely on the other party's conduct to its injury. SMC claims to have relied on Bowe's conduct in not objecting to paychecks and not requesting overtime payment. SMC asserts Bowe should be estopped from claiming overtime payment because he had the opportunity to object to his pay for twelve years but failed to do so. Bowe claims SMC did not rely on his conduct to its detriment, but rather received benefit from his overtime hours, some of which were compensated for as "comp time."

SMC has not clearly established the existence of the four elements for equitable estoppel. Bowe has raised genuine issues for trial with respect to whether he knew SMC would not pay overtime, whether SMC was aware of the agreement to pay overtime, whether Bowe's delay in filing a claim was intended to mislead SMC, and whether SMC relied on Bowe's delay to its detriment.

I find SMC has failed to establish it is entitled to judgment as a matter of law on the statute of limitations grounds, or based on its affirmative defenses of laches or equitable estoppel.

3) *Bowe's retaliatory discharge claim is without merit because SMC had a legitimate, non-retaliatory business reason for Bowe's termination.*

SMC moves for summary judgment with respect to Bowe's claim for retaliatory discharge on the grounds there was a legitimate, non-retaliatory business reason for Bowe's dismissal.

SMC claims its reasons for discharging Bowe were legitimate, based on sales call reports, receipts and telephone records, as well as customer logs. SMC contends not only that Bowe's claims for overtime were fraudulent, but that he misrepresented his work schedule on almost a daily basis, not even working the agreed upon forty hours. In addition, he submitted business expense claims for meals eaten in his home town, and used company time for personal affairs, such as dental appointments. When Bowe was given an opportunity to explain and/or correct the records, he merely insisted they were correct, and did not change anything.

Bowe claims he was singled out by SMC for discriminatory treatment because he filed this lawsuit requesting overtime payment. SMC required him to reconstruct his com-

plete work record for a seven week period, on an hourly basis, without access to his previously submitted time records, which were not normally divided into hourly increments. He maintains he was the only employee required to submit such a reconstructed record, and it is not surprising that the reconstructed records did not correspond to those originally submitted.

■ The timing of Bowe's discharge, one half hour before a scheduling conference pertaining to his case against SMC; the manner in which he was singled out to redo previously submitted records, and the fact that his supervisor had no knowledge of his termination before it occurred, raise genuine issues of material fact concerning the motive for his dismissal from a company where he had been employed for more than thirteen years. Accordingly, summary judgment on this issue is denied.

### C. Bowe's Motion for Summary Judgment with respect to SMC's counterclaim for abuse of process, fraud and breach of fiduciary duty.

Bowe claims he is entitled to summary judgment with respect to SMC's counterclaims because under Colorado law, a foreign corporation is precluded from transacting business within the state of Colorado if it does not have the requisite certificate of authority under Colo.Rev.Stat. § 7–115–101(1) (1995). Under Colo.Rev.Stat. § 7–115–102(1) (1995) a foreign corporation doing business in the state without authority cannot maintain a proceeding in any court, although it is entitled to defend itself under Colo.Rev.Stat. § 7–115–102(5) (1995). Bowe cites *Levitt Multihousing Corp. v. District Court,* 188 Colo. 360, 534 P.2d 1207, 1209 (1975) as authority that a counterclaim is as much an affirmative action as an original complaint which would be precluded by Colo.Rev.Stat. § 7–115–102(1) (1995).

SMC maintains it need not obtain the certificate of authority under § 7–115–101(1) to maintain a proceeding in court. It relies on Colo.Rev.Stat. § 7–115–101(2) (1995), which states a foreign corporation is not considered to be transacting business in this state by reason of any one of the following activities:

sales through independent contractors, solicitation of orders if they require acceptance outside this state before becoming contracts, or business transacted through interstate commerce.

SMC cites *Cement Asbestos Products v. Hartford Accident and Indemnity Company,* 592 F.2d 1144 (10th Cir.1979), a case with facts similar to those before me. There, Capco, an Alabama corporation, sold its products in Colorado, either through designated dealers or its lone sales representative who resided in Colorado. *Id.* at 1145. Capco furnished promotional materials, a leased car, and an "800" number to its representative who worked out of his home. *Id.* at 1147. Capco also provided technical representatives to assist customers with the installation of Capco products. *Id.*

The Tenth Circuit held a foreign corporation engaging solely in interstate commerce would not be required to comply with the Colorado statute, and Capco's business in the state was not sufficiently intrastate to bring it within the scope of the statute. *Id.* at 1146. The court addressed each of the three types of contacts Capco maintained in Colorado, namely distributor sales, local sales representation, and technical assistance. The court found these contacts were not sufficient to qualify the company as a foreign corporation doing business in the jurisdiction. *Id.* at 1146–47.

■ SMC has demonstrated, at minimum, the existence of a genuine issue for trial, as to whether its business activities within the state of Colorado fall under the exceptions listed in Colo.Rev.Stat. § 7–115–101(2)(e), (f) and (k) (1995), and as to whether its contacts within the state of Colorado are sufficient to require it to obtain a certificate of authority under the statute before proceeding with its counterclaim. Accordingly, Bowe has failed to establish as a matter of law that he is entitled to judgment on SMC's counterclaim, and summary judgment is denied.

### IV. CONCLUSION.

For the aforesaid reasons, I deny SMC's requests for summary judgment with respect

to the FLSA overtime exemption, the Colorado Minimum Wage Order, the statute of limitations and doctrines of laches and equitable estoppel, and retaliatory discharge. I also deny Bowe's motion for partial summary judgment on the FLSA overtime issue.